# ALASKA RURAL REHABILITATION CORPORATION
## v. CLARK et ux.

No. S–2527.

District Court of Alaska.   Third Division.   Anchorage.
Jan. 7, 1942.

L. V. Ray, of Seward, for Alaska Rural Rehabilitation Corporation.

Almer J. Peterson, of Anchorage, for Frank Clark.

HELLENTHAL, District Judge.

This action was brought by the plaintiff to foreclose a vendor's lien on certain real property, described in the complaint, for failure to make three yearly payments as provided for in the contract under which the possession of the property was given, a copy of which has been attached to the complaint and marked Exhibit A.

In the answer, defendants admit the execution of the said contract, claim that certain payments were made thereon and thereafter in their answer set forth the same amounts, as a counterclaim.

■ Throughout the hearing, the plaintiff has taken the position that the defendants could not off-set any amount due them on another transaction or other transactions and has objected to the evidence offered by the defendants in support of their counterclaim or counterclaims. It, therefore, becomes necessary to determine whether or not the defendants can set off the amounts due, if any, on their counterclaim or counterclaims. This being an action to foreclose a vendor's lien, which it is provided in the contract shall be foreclosed like a mortgage and, therefore, is of an equitable nature, the law applicable to actions of an equitable nature becomes important.

Section 3863, CLA '33:

"Counterclaim of defendant. The counterclaim of the defendant shall be one upon which an action might be maintained by the defendant against the plaintiff in the action; and in addition to the cases specified in the subdivisions of section 3422 it is sufficient if it be connected with the subject of the action."

Section 3422, CLA '33:

"Nature of counterclaim and how stated. The counter claim mentioned in this chapter must be one existing in favor of the defendant and against a plaintiff, between whom

a several judgment might be had in the action, and arising out of the following causes of action:

"First. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim.

"Second. In an action arising on contract, any other cause of action arising also in contract, and existing at the commencement of the action. The defendant may set forth by answer as many defenses and counterclaims as he may have. They shall each be separately stated and refer to the causes of action which they are intended to answer in such manner that they may be intelligently distinguished; provided, that the defendant shall not be required to admit in his answer any liability or indebtedness to the plaintiff in order to be permitted to plead a counterclaim."

In this case, the plaintiff's action is founded on a contract. Under the above Section of the Code, the defendants can clearly counterclaim for any matter that also arises on contract. 41 C.J. p. 849, Sec. 1031: "(cc) Effect of Set-Off. Acceleration cannot take place where there is an available set-off equal to or exceeding the amount in default, * * * " (And cases cited.)

Salinger v. Lincoln National Life Insurance Co., 8 Cir., 52 F.2d 1080, 80 A.L.R. 242: "As respects acceleration, mortgagee which, when interest became due and also when foreclosure suit was filed, possessed moneys belonging to mortgagors, was obligated to apply such moneys in payment of interest. * * * " (And cases cited.)

Under the above law as interpreted by the Courts, set-offs clearly are allowed.

The defendants, by Paragraph I of their counterclaim, claim that $40.80 was paid on the realty contract. The plaintiff has shown that this $40.80, although originally received as money to be applied on the realty contract, was afterwards, with the consent of the defendants, credited in another manner. But, since the defendants will be allowed all credits founded on the contract and set forth in their

counterclaim, it becomes immaterial where this $40.80 has been credited.

The defendants claim credit for a certain amount of sheep delivered to the plaintiff. The number of sheep delivered will depend upon whether or not the defendants purchased additional sheep from the plaintiff about February 1, 1941. And, in this connection, we must consider whether or not such a purchase has been made.

If the oral evidence alone were controlling, the Court would not hesitate to hold that such a purchase had not been made. If, however, we consider the subsequent agreement made between the parties on or about May 2, 1941, under which a credit memorandum (Defendants' Exhibit 7) was afterwards and on May 25 made and signed by both a representative of the plaintiff and the defendant Frank Clark, in which the number of sheep and the price was set forth, the Court deems itself bound by said arrangement and considers itself precluded from going into this matter by reason of the fact that both plaintiff and defendants agreed to the same in writing. And, therefore, the Court considers itself bound to make an adjustment between the parties on the basis that a sale was made of plaintiff's sheep to the defendants and Mr. Don Parks, on or about February 1, 1941.

On January 6, 1941, the plaintiff wrote the defendant Frank Clark a letter advising him that he was enclosing a statement of his account as it appeared on the books of the plaintiff corporation December 15, 1940, and that there was then showing an indebtedness to the plaintiff of $6,746.49, on which payments in the amount of $1,783.90 were then considerably past due (Plaintiff's Exhibit D). This statement contains all the amounts or has reflected all the amounts in it due the plaintiff from the defendants at that time, except the amount due plaintiff for the purchase of sheep about the 1st of February, 1940, for which a chattel mortgage was to be given but which mortgage was never executed and is supplied by Plaintiff's Exhibit "S"—

"Note the executed $2,064.80". This statement, together with the payments or counterclaims, claimed by the defendants constitute the basis of settlement in this case.

We will next consider the various items claimed by the defendants and later make a statement of the whole matter.

In Paragraph V of defendants' counterclaim, the defendants claim a credit for ten days, man and team, at $10 a day for taking care of sheep, which they allege was done during the month of February, 1940. Since the Court holds that all the sheep at that time belonged to the defendants, they cannot recover for the same.

In Paragraph VI of defendants' counterclaim, they ask for $1,144 for taking care of plaintiff's sheep. The Court finds that the sheep at that time did not belong to the plaintiff but had been sold to the defendant Clark and Mr. Don Parks. And, for this reason, the Court finds the defendants cannot recover from the plaintiff for the same.

In Paragraph VII, the defendants claim $50 for helping to deliver the sheep to Fish Hook Inn from May 5th to 10th in the year 1940. Whether or not the defendants can recover this amount is problematical. If a man purchases sheep, he is entitled to have them delivered, but since Fish Hook Inn is a considerable distance from the place of plaintiff's business and since ordinarily sheep could be delivered to a person's place of business and a person selling sheep is not obligated to deliver them at a distant place, the Court feels that this credit should be allowed the defendants.

In Paragraph VIII of the counterclaim defendants ask for $200 for taking care of 13 rams for 40 days at $5 per day. Since this amount seems to be reasonable under the evidence, and since the Court has not been able to determine whether or not these rams were considered or counted in connection with the sale or delivery of the sheep, the Court is inclined to allow the defendants a credit for this amount.

In Paragraph IX, the defendants claim a credit of $105 for sheep delivered to Dinkle. The Court is of the opinion that considering Plaintiff's Exhibit H, in which the defendant Frank Clark has voluntarily assumed this guarantee to deliver 15 ewes, the Court is of the opinion that this credit cannot be allowed.

In Paragraph X of defendants' counterclaim, the defendants claim $25 for use and injury to a shearing machine and dipping tank. The Court thinks, under the testimony, the defendants are entitled to recover this $25.

In Paragraph XI, the defendants claim $420.25 for wool delivered to the plaintiff. The evidence in this case shows that said wool was accounted for and for this reason the defendants cannot again recover from the plaintiff (Plaintiff's Exhibit T.)

In Paragraph XII defendants claim $225 for 75 lambs. The Court is of the opinion that defendants are entitled to recover for these lambs, at the price agreed upon in defendants' Exhibit 7.

Paragraph XIII is a summary of matters we have previously considered.

In Paragraph XIV, the defendants endeavor to recover for improvements made on the real estate in the sum of $720. The Court is of the opinion that ordinarily a mortgagor cannot offset for improvements made on the premises upon an action to foreclose the mortgage. These improvements add to the value of the realty and when the realty is sold in a foreclosure suit, the mortgagor gets the benefit, and these improvements are reflected in the amount received on the sale. However, in this case, provision is made for credit for improvements, provided that they have been authorized by the plaintiff. The evidence in this case shows that the improvement relating to building a fence was authorized by plaintiff and the Court is of the opinion that the defendants are entitled to off set for said improvement in the sum of $240.

We have considered all the credits claimed by the defendants, in addition to the matters shown on Plaintiff's Exhibit D, and we will now state the same:

| | |
|---|---:|
| Due, as shown on Plaintiff's Exhibit D.......... | $1,783.90 |
| 1939 and 1940 yearly payments ................. | 470.96 |
| Sheep purchased February, 1940 ................ | 2,064.80 |
| Balance due on mortgages for original sheep purchased ................................... | 582.50 |
| | 4,902.16 |

Credits:

| | | |
|---|---:|---:|
| Delivering sheep May 5 to 10, 1940........ $ | 50 | |
| (As claimed in Par. 7 of Defdt's counter-claim.) | | |
| Care of rams, 40 days @ $5 per day....... | 200 | |
| (As claimed in Par. 8 of Defdt's counter-claim.) | | |
| Shearing machine and dipping tank ....... | 25 | |
| (As claimed in Par. 10 of Defdt's counter-claim.) | | |
| Fencing ................................ | 240 | |
| (As claimed in Par. 14 of Defdt's counter-claim.) | | |
| Sheep sold and delivered to plaintiff: | | |
| May, 1940 (Pltff's Ex. 7) | | |
| 75 ewes with lambs @ $13................ | 975 | |
| 129 ewes @ $10......................... | 1,290 | |
| 112 yearling ewes @ $10 ................ | 1,120 | |
| 40 culls @ $10 ......................... | 400 | 4,300.00 |
| Balance ................................. | | $ 602.16 |

The Court has started with $1,783.90 as a basis for this calculation. This is the amount shown due as per Plaintiff's Exhibit D. This Exhibit was offered by the plaintiff and no evidence was offered to contradict any of the figures therein contained.

The plaintiff may prepare Findings of Fact, Conclusions of Law and a Decree in accordance herewith.